1918 Minnesota Jonathan Scarborough versus Federated Mutual Insurance Company. All right Mr. Redden we'll hear from you first. Thank you and may it please the court. I'm David Redden on behalf of the appellant Jonathan Scarborough. This appeal is from an order granting summary judgment against Mr. Scarborough regarding his claim for retaliation under the Minnesota Whistleblower Act or the MWA against his former employer Federated Mutual Insurance Company. Mr. Scarborough contends in this appeal that the district court did not properly apply the summary judgment standard by not considering the facts in the light most favorable to Mr. Scarborough or by granting him all reasonable inferences and in my argument I intend to address the following issues in the district court judge's order. First protected conduct, second causal connection, and third evidence of pretext. Mr. Scarborough contends in this litigation that he engaged in protected conduct under the MWA on three separate occasions in July. The district court acknowledged the latter two occasions but held that Mr. Scarborough did not engage in protected conduct on July 7, 2014 and so holding the district court failed to acknowledge certain facts in the record. Now to set the stage Mr. Scarborough and Mr. Pennington were discussing how Mr. Johnston had tried to pass off expensive picture frames as a business expense. Mr. Scarborough commented that Mr. Johnston likes things nice and fancy and he pointed out that he could probably cut costs on conference rooms but he liked to have his conferences at a fancy law firm. Now the district court said that that is not a report of unlawful conduct. We never contended that it was however. Back to the conversation Mr. Pennington responded what are you talking about the law firm lets Mr. Johnston use its conference rooms for free. Now here's the protected conduct. Mr. Scarborough responded that Mr. Johnston had been submitting and receiving reimbursement of supposed charges for the use of those conference rooms and that he would look into whether they were in fact free and that is a report of suspected theft by fraud. Now the district court admitted this detail in finding that there was no protected conduct on July 7, 2014 which is inconsistent with the summary judgment standard. The district court also erroneously rejected Mr. Scarborough's direct evidence of retaliatory intent in connection with the August 4, 2014 written warning that he was issued. Now the MWA say Mr. Redden before you go on to the August issue what difference does it make whether the first incident was protected conduct if the court agreed that there were two other acts of protected conduct that took place before any adverse action. Well thank you for the question Judge Colleton. It makes a difference because within an hour of that conversation Mr. Pennington contacted administration and federated and asked for a copy of Mr. Scarborough's receipt for a company trip to the Disney Resort and he said in his deposition that he just wanted to ensure that you know there were no personal charges but testimony from multiple witnesses from federated have confirmed that on occasion on such trips personal charges or wind up on the company credit card and that nothing is wrong so long as they're repaid. And so it's our contention that within an hour of receiving this report of wrongdoing by Mr. Scarborough was a direct report Mr. Pennington starts fishing around to see if Mr. Scarborough has if there's something that he can pin on Mr. Scarborough. All right. That's the stage for all the retaliation that we heard. All right. Thank you. You're August 4th if you wish. Thank you your honor. The NWA prohibits a broad range of retaliatory conduct including disciplining or threatening an employee for making good-faith report of an illegality. The written warning is obviously discipline and it's also you would say think that most employees would find written warnings to be threatening. The district court ignored the warning that the warning identifies the investigation into Mr. Johnston's fraudulent activities no less than three times. This is the same investigation that Mr. Scarborough prompted by reporting Mr. Johnston's illegal activities. Moreover it ignores that Mr. Scarborough's knowledge of the illegal scheme is inextricably intertwined with and not separate from Mr. Scarborough's report of the illegal scheme. And it requires no inference to see that Mr. Scarborough's report of Mr. Johnston's caused the written warning. That makes it direct evidence of an adverse action making that an issue for the jury. As the causal connection the district court ignored substantial evidence of retaliatory animus other than timing. First with regard to Mr. Pennington we have the evidence of Mr. Pennington's prior knowledge of Mr. Johnston's unlawful conduct. He knew that the conference rooms were free. He approved Mr. Johnston's expenses for those same conference rooms including for at least two conferences that he attended. The judge also ignored that Mr. Pennington lied about Mr. Scarborough and sought to cast Mr. Scarborough in the most negative light possible after Mr. Scarborough's protected conduct all in an effort to make a case for Mr. Scarborough's termination. For example on July 7 he contacted administration and started fishing around to see if there was something he could pin on Mr. Scarborough as it related to personal expenses on the corporate card. After Mr. Scarborough's protected reports on July 7 and July 14 Mr. Pennington alleged that Mr. Scarborough had bad motives in reporting Mr. Johnston's scheme that he wanted to nail him to the wall. This is in an email dated July 25 of 2014. In that same email Mr. Pennington wrote that Mr. Johnston's scheme started on July 7 when Mr. Pennington was Mr. Johnston's manager but that's irrefutably false. It started before July 2012 and it started when Mr. Pennington was Mr. Johnston's manager. In that same July 25th email Mr. Pennington falsely reported that Mr. Scarborough had expressly told Mr. Braxton Weaver to talk to Mr. Johnston about using those conference rooms to put extra money in his pocket. Mr. Weaver testified that Mr. Scarborough said no such thing. On August 4 of 2014 after Mr. Scarborough's protected conduct on July 30th Mr. Pennington excitedly texted Mr. Kerr and said that Mr. Scarborough had been gossiping with others at Federated and that he had been talking to Mr. Johnston's director of reports and in this text message he says this is unbelievable and claims that he predicted it in a prior conversation with Mr. Kerr and then importantly he says we might have something here which strongly suggests that they were looking for something here even hoping for something to justify Mr. Scarborough's termination. Also on August 4 of 2014 Mr. Pennington speculated in an email to Mr. Kerr that Mr. Scarborough would not have repaid the personal expenses on the company credit card were it not for the issues with Mr. Johnston's expenses but there just prior to the decision to demote Mr. Scarborough Mr. Pennington sent Mr. Kerr a text message advocating for his dismissal and bragging about his plan to replace Mr. Scarborough so there's significant evidence of retaliatory animus. As to Mr. Kerr on July 27 2014 Mr. Scarborough emailed him and asked to speak with him about these allegations relating to his integrity and character as a result of his report of Mr. Johnston's scheme. Mr. Kerr was required by Federated's policies to do something about that to look into it to escalate the issue. He did nothing. On July 30th of 2014 Mr. Kerr interrogated Mr. Scarborough about various issues and Mr. Kerr admitted in his deposition that he was upset about the meeting because Mr. Scarborough had an explanation for each of these issues that Mr. Kerr had raised. Now why would Mr. Kerr be upset about that? Well the obvious inference here is that he was hoping but failed to catch Mr. Scarborough in misconduct. Now so there's substantial evidence of retaliatory animus besides just timing. The judge also ignored substantial evidence of pretext. Regarding the written warning the district court held that Mr. Kerr and Mr. Pennington obvious or honestly believed Mr. Scarborough was complicit in Mr. Johnston's scheme but it is our position that that is a fact issue for a jury. As a facial matter it is absurd to think that Mr. Scarborough would knowingly enable Mr. Johnston's fraud for upwards of two years even though according to Mr. Pennington the two did not get along but then suddenly reported you know two years in and implicate himself in the process and that alone makes it a fact issue for the jury because this proposition is just absurd. And then there's Mr. Pennington claiming that he had told Mr. Scarborough multiple times in the past that the conference rooms were free. Now that's obviously suspect in light of the evidence of Mr. Pennington's complicity and Mr. Johnston's scheme. Next you've got Mr. Johnston claiming that Mr. Scarborough knew the whole time but Mr. Johnston is of course the guy who is an admitted liar and thief and he had an obvious axe to grind with Mr. Scarborough for disclosing his little scheme. And so finally Mr. Weaver on closed inspection of his deposition testimony did not tell Mr. Pennington or Mr. Kerr anything that would support Mr. Scarborough having prior knowledge. In fact Mr. Kerr's own notes from his follow-up meeting with Mr. Weaver say and I quote no evidence or proof. Now under Eighth Circuit precedent the honest belief doctrine only comes into play when it's supported by evidence of a reasonably informed and considered decision. A jury could easily find that this was not a reasonably informed and considered decision and there was no honest belief. It is thus an issue for the jury. Now the judge also cited what it called intervening events including those personal charges on the company credit card so these cruise referral credits not using corporate travel and then held that these intervening events negated any causal connection but in doing so the judge ignored uncontroverted evidence from federated zone witnesses including Mr. Kerr and Mr. Pennington. Mr. Scarborough didn't do anything wrong in connection with any of these things. These things that he was doing were not wrong. There was no policy and other people did it. They weren't punished. That makes it evidence of pretext and finally regarding the demotion the district report pointed to Mr. Scarborough contacting Mr. Johnston's direct reports but as we've pointed out to the court the you know Mr. Kerr didn't act upset about it. Mr. Pennington later testified that there was nothing wrong with him doing it that it made total sense. Mr. Scarborough supposedly gossiping about Mr. Johnston's situation was only supported by Johnston the the guy with the axe to grind against Mr. Scarborough for reporting his scheme. No follow-up investigation was done and in fact Mr. Kerr testified in his deposition that he didn't know whether the accusation was true and that he didn't judge the accuracy of the allegations so if he doesn't have a conclusion there can't be an honest belief. And finally regarding Mr. Scarborough's termination the district court talked about what Mr. Kerr called the straw that broke the back. Mr. Scarborough's conversation with a co-worker about the possibility that a regional marketing manager might be removed from their position soon. Now setting aside any arguments about whether Mr. Scarborough really did anything wrong here Mr. Kerr's own testimony establishes that this conversation was with a friend was not sufficient alone to warrant termination and Mr. Kerr says all these other proffered reasons reasons that a jury could find pretextual also informed that decision to terminate and I would like to point out if I could the standard the controlling standard for causation for MWA claims. That standard is articulated in McGrath v TCF Savings Bank FSB which is cited on page 37 of our brief. Under this causation standard there's no same decision defense an employee is not required to show that every asserted reason for the adverse action was a pretext and the employee is not required to prove but for causation. Instead the employee need only have evidence from which a jury could find that the decision was motivated at least in part by the illegitimate reason and this causation standard is important here because there's substantial evidence from which a jury can infer retaliatory animus as well as substantial evidence of the other asserted reasons for Mr. Scarborough's termination being a pretext and that's a jury could conclude that even if Mr. Scarborough did this you know called his friend and scared him and that sort of thing that that that's that's fine the termination was nevertheless motivated in part by his protected conduct and we accordingly request the court reverse dismissal on summary judgment and remand for trial and I'll reserve the my short remaining time for rebuttal. Thank you. Very well. Thank you for your argument. Mr. Stenmo we'll hear from you. You'll hear me now? Yes. May it please the court counsel even if you assume that Mr. Scarborough's statements are reports all three of them it was his multiple instances of intervening misconduct that got him fired any one of which would have been sufficient to get him terminated and the court doesn't have to determine if Mr. Scarborough in fact aged in any of that misconduct as long as Mike Kerr had an honest belief that Scarborough had engaged in that misconduct and there's no evidence otherwise all you have to do is look at the final precipitating event a key pivotal moment in this case which was secretly recorded by Mr. Scarborough and part of this record 224 so after Mr. Scarborough gets a written warning about his honesty and integrity he's for Christopher Terry out of the blue and false he's next to get fired and this wasn't the first time that he'd been spreading false gossip and rumors that kind of rumor mongering by a senior leader of the organization who's supposed to be a role model for honest integrity is intolerable mr. Scarborough says that this was trivial well it certainly wasn't true Christopher Terry who was completely unnerved by the incident and believed he was going to get fired and it was trivial to Mike Kerr who talked to Christopher Terry and after that decided to fire Scarborough on the spot and Scarborough falsely telling Christopher Terry he's going to get fired has nothing to do with Freddie Johnson Scarborough falsely telling Christopher Terry he would get fired has nothing to do with Mike Pennington but it has everything to do with Scarborough's honesty and so many levels and as this court does not sit the super personnel department it was Federated's decision to decide how they wanted to treat uncontroverted in the record and it was Mike Kerr Mike Kerr alone who decided to terminate employment he did Mike Pennington Mike Pennington wasn't even Scarborough's supervisor at the time it was Scarborough's repeated misconduct and the district court is so ruled twice and if there's any doubt why Scarborough was fired simply look at the binding admissions that he made in his Missouri lawsuit where he says that Mike Pennington and Braxton Weaver Johnson made these false allegations about him and that's what to Mike Kerr to get fired nothing else and if you look at two I think critically important cases it's it's Mervine versus plant engineering which is an a circuit case from 2017 which is remarkably simpler case and also the main versus Ozark health case which judge Collett and you were a part of the panel on it was decided in May of 2020 this is really Scarborough's fourth bite at the apple he was dismissed the district court went up to the a circuit you remanded to take another look at this in light of a Freelander and back up here again after Judge Frank granted some rejection again we got the Missouri dismissal so we believe it's time to put an end to this I want to talk quickly about the Mervine case and the Ozark health case because I think they're critically important in the Mervine case it's very similar to this case it was affirming a summary judgment from a Minnesota whistleblower case in that instance the plaintiffs stated that he will provide proposal was illegal double-billing he was three weeks later but like Scarborough it was discovered that Mervine displayed a lack of professionalism made statements that cause plant engineering employees to question their job security discuss private employee information in the presence of others and like Scarborough he Mervine threatened to retaliate against one of his accusers stating I'm going to get that bitch for complaining to HR just like Scarborough did in his conversations that he recorded where I said he was gonna he was out to get mr. Pennington he was going to be expletive deleted to to retaliate against and like Mervine denied most of the allegations and the court is comments were protected activity but this court found that any inference of a causal relationship by temporal connection was under meaning events and this court noted in determining whether a plaintiff has sufficient evidence of pretext key question is not whether the stated basis for termination was actually occurred to have occurred and going on further this court said the question however is not whether he actually aged in the con contact or conduct for which he was terminated but whether the employer in good faith believed that he was guilty of the conduct justifying the discharge now the Ozark health case from May this year judge Colton's this involved a health worker and she was fired for raising her voice and being rude and obnoxious in a meeting and she claimed it was because of her whistle-blowing and the court said in in that case much like mr. Scarborough does says mains rely on testimony in the testimony of others to so show that she was not rude or inappropriate at the means prove the falsity of the employers explanation if an employer in explaining a termination says it believed that the employee violated company rules then proof that the employee never violated company rules does not show that the employer's explanation was false that proof shows only that the employers belief was mistaken to prove that the employers explanation was false the employee violated company rules and the court goes on to say therefore while a plaintiff may establish pretext by showing that the employer did not truly believe the employee engaged in the conduct justifying termination a plaintiff may not establish pretext simply by showing that the employers honest belief was erroneous unwise or even unfair this is true regardless of whether the employers explanation is based on first-hand knowledge or third-party reports so it's it's our view that the Mervine case and the Ozark health case are simply determinative of this this case on the honest belief of well they state the law we're familiar with the cases but why don't you address how they applied the record here yes so in this case you know first they don't have evidence the direct evidence because the August 4th warning letter confirms that it wasn't based on his complaints it was based on his denying his complicity in the Freddie Johnson matter which is appendix 179 to 180 and taking a look at the admissions in his Missouri lawsuit also shows why he was terminated so I think that neutralizes any claim of discriminatory animus Mike Kerr was the decision maker he and mr. Scarborough admits that and all the stuff that they about Mike Pennington having some sort of animus toward mr. Scarborough doesn't impact what Mike honestly believed about what happened Mike Kerr believed that Scarborough was complicit in the Freddie Johnston scheme had been confirmed from three sources Pennington Johnston and Braxton Braxton Weaver also said that he had engaged in unethical conduct Scarborough got aggressive with his confirmed by cares contemporaneous notes at appendix 182 he Scarborough got a warning letter and then he calls up Johnston's marketing reps and falsely tells them that Johnson's getting moved out and there's going to be other changes and that's appendix 189 and then Scarborough cheats on his expense report for charging personal expenses and after he got caught he wrote federated to check which is at appendix 195 and then he gets demoted for acting unprofessional falsifying his expenses pocketing cruise gift cards and credit card miles spreading false rumors and engaging in other conduct that calls into question his integrity and this is confirmed by Mike's Mike Kerr's talking points at appendix 201 and 202 and then we have the final precipitating event after he gets the demotion he again engages in destructive rumor mongering and there's no question about that he did it you got you got the recording there it's an appendix 224 and as I said it wasn't trivial Christopher Terry didn't think it was trivial he was scared to death he was gonna lose his job and it wasn't trivial to Mike Kerr and even mr. Scarborough suggests that it wasn't trivial to him he said that he had to call up he had to call Christopher Terry and tell him because this was really important information well it was false information he was rumor mongering so to suggest that this was trivial it's off and at the end of the day under the honest belief standard mr. Kirk would be completely wrong about all this stuff and there's no way I didn't believe that mr. Scarborough had engaged in that conduct and the secretly recorded conversations it's interesting that that those true they reveal his true motives about what he was trying to do he was trying to get back at Mike Pennington he was retaliating against Mike Pennington and interestingly none of these alleged reports that mr. Scarborough has alleged show up on any of these 114 recordings you would think that out of 114 recordings that there would be some evidence of that and there is none and again take a look at the the allegations which are binding on admissions on mr. Scarborough in the Missouri case this court has said that allegations in the complaint are binding admissions admissions and pleadings are judicial admissions and binding on the party he says in those in his complaint that Mike Kerr was the chief decision-maker that he was fired because of statements that Braxton Weaver Freddie Johnston and Mike Scarborough Mike Kerr about and that's what caused him to lose his job he says nothing in there about well I was fired because of some of these other reasons so just just have to look at mr. Scarborough's own admissions in the Missouri case with regard to pretext it's a high burden the plaintiff has to show retaliatory animus he has to show that Mike Kerr headed out for mr. Scarborough and he has no evidence of that he talks a lot about Mike Pennington and Freddie Johnson but the decision-maker Mike Kerr had no retaliatory animus and again take a look at the Missouri admissions what he says there with regard to pretext he cites to Mike Jenkins who's not a comparator because he's not similarly situated in all respects claims that Federated didn't follow its own policies but Kerr in fact did personally speak to Scarborough shortly after he sent the email and this conspiracy theory involving Pennington completely ignores that Pennington wasn't his supervisor at the time he got fired Pennington wasn't consulted by Mike Kerr before he got fired and at the end of the day it's his allegations in the Missouri lawsuit it's what Kerr honestly believed about what misconduct that mr. Scarborough had engaged in that led to his termination on this record no reasonable jury could find for mr. Scarborough they just could and based on binding president in the Mervine case and the Ozark health case we believe that judge Frank's summary judgment should be affirmed in this instance counsel do you have any quarrel with the district courts holding that the July 30 communications constituted a report um you know for the purposes of this argument I don't think it matters we could we could even concede for the sake of argument that it wasn't report it doesn't matter because at the end of the day I guess my question is whether you do concede it I didn't say anything in the briefs that that raise the issue yeah we don't believe that that is a report but you don't even have to go there because he doesn't pass causation and he doesn't get past pretext so it's the unnecessary to you and address that why do you think it's not a report well because he's just talking about mr. Johnson likes things nice and fancy and in fact it wasn't mr. Scarborough who uncovered this alleged fraud or this fraud from Freddie Johnson it was actually you know two people within Federated hold on I thought I thought the nice and fancy was July 7 but July 30 is the tax oh okay yeah July 30 is taxed first there's no way I don't see you can actually said that and secondly it's not a it's not a violation of the law in fact I think even mr. Scarborough said that nobody could say that Federated did anything wrong with that in that regard so I I don't think that that report was even constitutes a report of the whistleblower all right thank you for your argument yes thank you your honor mr. Redden we'll hear from you in rebuttal and thank you your honor we obviously have substantial disagreement with Federated's characterization of the record and whether it is characterizing the record in the light most favorable to mr. Scarborough and giving him the benefit of all reasonable inferences and those are detailed in our rebuttal that we submitted to the court I'll give a couple examples one is claiming that these intervening events were misconduct for example this claim that he cheated on his expenses there's substantial evidence that what he did was not cheating and that it wasn't misconduct so that makes it an issue for the jury another example is when he says that this was not the first time mr. Scarborough engaged in rumor-mongering in his deposition Mike Kerr did not point to prior rumor-mongering as a basis for any of his decisions opposing counsels talked about mr. Scarborough's conversations with people other than mr. Kerr and mr. Pennington they weren't parties to those conversations that wasn't a basis for their decisions did now the question of the honest belief doctrine I think is key in this case but you know the thing is that you know if a person says well this is what I honestly believe the 8th Circuit precedent says that there's got to be some evidence to support that that was a reasonably considered and supported decision and it is not for the reasons that we've pointed out and finally I'd like to talk about mr. Pennington mr. Pennington was heavily involved in the decision to demote mr. Scarborough which is clearly an adverse action and was also heavily involved in the decision to issue a written warning which is an adverse action under the Minnesota whistleblower act and mr. Kerr specifically said that if the termination did not arise solely because of you know this conversation with a friend but it was the straw that broke the camel's back which ties in all those other things and so for that I see I'm out of time and unless the court has any I appreciate the opportunity very well thank you to both counsel for your arguments the case is submitted and the court will file an opinion in due course